# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

COMPANY WRENCH, LTD,       )
)    Civil Action No. 2:10-cv-1763
       Plaintiff,       )
)    Judge Mark R. Hornak
v.                    )
)
HIGHWAY EQUIPMENT COMPANY,   )
)
       Defendant.     )

## OPINION

**Mark R. Hornak, United States District Judge**

In this defamation/intentional interference with prospective contractual relations case, the Plaintiff claimed that the Defendant's President, Thomas Reynolds, deep-sixed a lucrative heavy equipment distributorship deal that the Plaintiff was about to land with Hyundai by sending a well-timed derogatory email to the President of Hyundai. At the end of a hard-fought, one week trial, the jury found that the Reynolds email was false and defamatory of the Plaintiff, but that the Plaintiff did not suffer any actual damages as a result, nor did the email interfere with a prospective contractual relationship between the Plaintiff and Hyundai. Nonetheless, because the Court made a significant, plain error in one portion of the Verdict Form, and because Pennsylvania law requires it, there will be a new trial on the issues of presumed and punitive damages. Because the Plaintiff's other assignments of error were not error at all, that will be the scope of the new trial.[1]

---

[1] Thus setting up a situation in which the new trial will occur in a context in which the email, sent only to Hyundai, has been found to be false and defamatory, but neither caused actual harm to the Plaintiff, nor did it, as a matter of fact, quash the potential Hyundai deal. The new trial will be narrow and will focus on whether that email was sent in a fashion in which presumed and/or punitive damages would be permitted to be assessed, and if they are, in what amount.

Now before the Court is the Plaintiff Company Wrench's Renewed Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial, ECF No. 201. The Court has considered the Plaintiff's Motion, its supporting Memorandum of Law, ECF No. 202, the Defendant Highway Equipment Company's Brief in Opposition, ECF No. 203, the Plaintiff's Reply Brief, ECF No. 204, the Plaintiff's Supplemental Brief in Support, ECF No. 209, the Defendant's Supplemental Brief in Opposition, ECF No. 210, the jury charge conference transcript, ECF No. 206, the transcript for the relevant trial proceedings, ECF No. 207, and the transcript for the parties' oral argument relative to the Plaintiff's Motion, ECF No. 208. The Court grants the Plaintiff's Motion only to the extent the Plaintiff seeks a new trial on presumed and punitive damages relative to its defamation claim, and denies the remainder of the Plaintiff's Motion.

## I.    **BACKGROUND**

The parties know their case well, so the details will not be repeated here, except as necessary to illuminate the Court's rulings. Company Wrench sued Highway Equipment Company ("Highway"), based on an email that Thomas Reynolds, President of Highway, sent to John Lim, President of Hyundai Equipment Americas, Inc. ("Hyundai"). Company Wrench claimed that it was inches away from landing a relationship to become an exclusive distributor of Hyundai heavy equipment in a defined territory. This was to be the very first relationship between Company Wrench and Hyundai. Company Wrench contended that Mr. Reynolds (whose business, Highway, had done business with Hyundai for years) torpedoed its deal with that eleventh-hour email to John Lim, which arrived at the very same time that the President of Company Wrench and some of his colleagues were visiting Hyundai's United States operations center to "close the deal." The trial involved Company Wrench's claims for defamation and intentional interference with a prospective contractual relationship.

The parties went to trial on October 7, 2013. On October 11, 2013, the jury returned its verdict. The jury found in its special verdict that (1) Mr. Reynolds' email was not substantially true in all material respects; (2) Mr. Reynolds' email was defamatory of Company Wrench and was sent with some level of fault; (3) Mr. Reynolds' email was understood by Hyundai to be defamatory of Company Wrench in its meaning; (4) Mr. Reynolds' email was intended by Highway to be understood by Hyundai to be about Company Wrench and its business practices; (5) Company Wrench did not suffer any actual damages as a result of Mr. Reynolds' email; and (6) that Highway did not intend to, nor did, interfere with a prospective contractual relationship between Company Wrench and Hyundai. Pursuant to Federal Rules of Civil Procedure 50(b) and 59, Company Wrench now moves for judgment as a matter of law and, in the alternative, for a new trial.

## II.  DISCUSSION

### a.  Company Wrench's Motion for Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(b) provides:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
>> (1) allow judgment on the verdict, if the jury returned a verdict;
>> (2) order a new trial; or
>> (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b). Under Rule 50(b), this Court "must determine whether 'viewing the evidence in the light most favorable to the nonmovant and giving the nonmovant the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury

reasonably could' reach the conclusions that it did." *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 383 (3d Cir. 2002) (alterations omitted) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)).

"Although judgment as a matter of law should be granted sparingly, [it is granted] where the record is critically deficient of the minimum quantum of evidence in support of the verdict." *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 433 (3d Cir. 2009) (internal quotation marks omitted). "The question is not whether there is literally no evidence supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict." *Id.* (quoting *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083 (3d Cir.1995)). Furthermore, in performing this narrow inquiry, the court "must refrain from weighing the evidence, determining the credibility of witnesses, or substituting our own version of the facts for that of the jury." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007).

Company Wrench argues that judgment as a matter of law in its favor "is appropriate because no reasonable jury could fail to award damages for Highway's defamation of Company Wrench," and "no reasonable jury could fail to find damages resulting from Highway's tortious interference with Company Wrench's prospective Hyundai deal. . . ." Pls.' Mem. of Law in Supp. ("Pl's. Mem."), ECF No. 202, at 6. Specifically, Company Wrench contends that two (2) defense damage experts testified that the opinion of Mr. Ronald Slee, Company Wrench's damages expert, was flawed because his damages calculation was inaccurate in any number of ways, but their opinions really only attacked the weight of Mr. Slee's opinion, and they did not testify that no damages occurred at all. *Id.* at 8. Company Wrench represents that it produced "overwhelming evidence of economic loss as a result of Highway's wrongful conduct." *Id.* at 10. As to Company Wrench's intentional interference with prospective contractual relations

claim, Company Wrench contends that "no reasonable jury could find that Company Wrench had nothing more than a 'mere hope' of entering into a contractual relationship with Hyundai." *Id.* at 8.

Contrary to Company Wrench's contention, there was a "minimum quantum of evidence" (and in the Court's estimation, even a bit more) presented at trial upon which a reasonable jury could have properly concluded that Company Wrench suffered no actual damages, as defined in the jury instructions.[2]  Recall, the Plaintiff's entire case turned on whether an email from the Defendant's President, Mr. Reynolds, defamed the Plaintiff or interfered with the Plaintiff's anticipated deal with Hyundai.  The jury could conclude that Company Wrench did not lose any orders or business when the Hyundai deal as it wanted it fell through, and that it actually exceeded its sales projections in the period after the Reynolds email.  In addition, Company Wrench was able to purchase excavators and wheel loaders from manufacturers other than Hyundai.[3]

While the testimony adduced by the Plaintiff certainly would have supported a jury finding that the Reynolds email was the kiss of death on the Company Wrench/Hyundai deal, at the same time, there was also sufficient evidence presented upon which a reasonable jury could properly have concluded that the Reynolds' email did not trigger or cause Hyundai's decision as to what form of business arrangement it would offer Company Wrench.  Highway submitted evidence that the critical factors in Hyundai's decision to not offer Company Wrench the exclusive distributorship that the Plaintiff thought was in the works were (1) Mr. Hutchinson's

---

[2] "Actual damages may include lost profits, and may include harm to business reputation (if such specific harm to reputation is beyond any presumed damages to reputation you may award)."  Jury Instruction No. 75, ECF No. 196, at 35.

[3] Company Wrench argues that even in these scenarios, it necessarily suffered some actual harm.  While it is true that the jury could have found that a Hyundai distributorship arrangement would have had some additive value, and such a verdict would have been sustained, it is just as true that the jury's conclusions that the Reynolds' email caused no actual harm was also supported by the trial record.

rather expansive statements at a dinner meeting with Hyundai that rendered Hyundai doubtful that Company Wrench would honor what would be its defined and limited sales territory; (2) the challenges of Hyundai implementing the apparently novel idea of an exclusive national distributorship with the Plaintiff; and (3) Hyundai's solution, based on its own business judgment, that it would offer Company Wrench the opportunity to obtain national account status with Hyundai – not a complete refusal to deal with Company Wrench.

In particular, Highway produced witnesses from Hyundai at trial. They testified that the Reynolds email did not shape what would be a brand new relationship with Company Wrench. They testified that at a dinner involving Hyundai and Company Wrench leaders the evening before the email was sent, Mr. Hutchinson in essence did himself in by talking in a swashbuckling manner and, by his words and conduct, leading them to believe that no matter what he or a contract said, his enthusiastic push the envelope approach to business practices[4] would cause him to not abide by the territorial restrictions that Hyundai had in mind for Company Wrench's distribution of Hyundai equipment. In short, he made them very nervous, or so they testified. Mr. Hutchinson, on the other hand, testified that Company Wrench and Hyundai were good to go with an exclusive distributorship arrangement, that is until the Reynolds poison pen email arrived and that after that, the deal that Mr. Hutchinson anticipated cratered.

Which version was true? Was it the Reynolds email, or the dinner conversation, that affected Hyundai's thinking? Perhaps both of them? What was the exact nature of the deal that Hyundai had in mind? Did that change, either before or after the arrival of the Reynolds email?

---

[4] Mr. Hutchinson testified to the success of his business, and that testimony demonstrated that he was a high-energy, hard-working, essentially self-made entrepreneur. His testimony also would have supported a jury conclusion that one of the roots of his business success was his willingness to "go above and beyond" in any number of ways (perhaps both positively and negatively) in his business dealings. If the jury reached such a conclusion, that would have been entirely consistent with the thrust of the Hyundai testimony.

Did any change in the structure of a deal available with Hyundai actually harm the Plaintiff? Well, those things are what the jury trial was all about. The jury heard the witnesses, examined the exhibits, and listened to the arguments of able counsel on all sides. It rendered a verdict that Highway's President did send the email in question, it was defamatory of Company Wrench, it was intended to be read as defamatory by Hyundai, and was so read, but that it also did not cause Company Wrench any actual damages, nor did it interfere with a prospective business relationship between Company Wrench and Hyundai.

Was that the only possible conclusion that the jury could reach? No, but it certainly was one permitted by the evidence admitted at trial. That is why the Court sent the case to the jury. Both the verdict the jury actually rendered, and the verdict that Company Wrench argued for, were/would have each been supported by plenty of admissible record evidence. The jury rendered its verdict the way that it did and there was more than sufficient evidence to support it. Therefore, judgment as a matter of law on those matters for either party was, and is, out of the question under Rule 50, especially when viewing the evidence in the light most favorable to the nonmovant, Highway, and giving Highway the advantage of every fair and reasonable inference. Company Wrench's argument is more akin to asking this Court to reweigh the evidence in Company Wrench's favor, which it may not do.[5] Therefore, this Court denies the Plaintiff's Motion to the extent that the Plaintiff moves for judgment as a matter of law.

---

[5] While the Court will address damages issues in greater detail later on in this Opinion, contrary to Company Wrench's argument, there was not overwhelming evidence of actual damages to Company Wrench. Yes, its damages expert, Mr. Slee, testified to millions of dollars in damages. By the same token, while he has substantial experience in aspects of dealership management, he is not an accountant. Maybe that mattered to the jury. Highway's experts' testimony was principally aimed at shooting holes in Mr. Slee's testimony and the basis for it, and perhaps they accomplished that mission. Or, the jury believed the Hyundai witnesses and found no causal connection between the Reynolds email and any damage to Company Wrench, even if they accepted Mr. Slee's testimony in whole or in part. Or, the jury believed that Company Wrench's overall business appeared essentially unimpaired post-email and that there was no actual harm. Or, perhaps the jury put all of that together to conclude that Company Wrench incurred no actual damages. That process is what juries properly do in our legal system.

**b.**   **Company Wrench's Motion for a New Trial**

Federal Rule of Civil Procedure 59(a)(1) provides:

(1) The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:

> (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or

> (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

Fed. R. Civ. P. 59(a)(1).

A new trial may be granted when the verdict is contrary to the great weight of the evidence; that is, "where a miscarriage of justice would result if the verdict were to stand." *Pryer v. C.O. 3 Slavic*, 251 F.3d 448, 453 (3d Cir. 2001) (quoting *Olefins Trading, Inc. v. Han Yang Chem Corp.*, 9 F.3d 282 (3d Cir. 1993)). Rule 59(a) does not set forth specific grounds on which a court may grant a new trial. "The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court." *Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992) (citing *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)). Requests for a new trial are disfavored by the law, and a trial court will not grant a new trial on the basis of trial error unless the error resulted in prejudice. *Dean v. Specialized Sec. Response*, 876 F. Supp. 2d 549, 552-53 (W.D. Pa. 2012). In other words, no injustice will be found in non-prejudicial trial errors. *Id.*

The scope of the court's discretion in evaluating a motion for a new trial depends upon whether the motion is based upon a prejudicial error of law or on a verdict alleged to be against the weight of the evidence. *See Klein v. Hollings*, 992 F.2d 1285, 1289–90 (3d Cir. 1993). Because the court must be cautious not to usurp the proper role of the jury, the court has more limited discretion when the basis for the motion is that the verdict is against the weight of the

evidence; the court ought only grant a new trial on that basis when the verdict, if left standing, would result in a miscarriage of justice. *Id.* at 1290. This protects against a trial court supplanting the jury verdict with its own interpretation of the facts. *Olefins*, 9 F.3d at 289-90 (citing *Fineman v. Armstrong World Indus., Inc.,* 980 F.2d 171, 211 (3d Cir. 1992)).

When the motion involves a matter within the discretion of the trial court—such as the court's evidentiary rulings, jury instructions, or the proper handling of a prejudicial statement made by counsel—the district court has wider latitude in ruling on the new-trial motion. *Dean*, 876 F. Supp. 2d at 553 (citing *Foster v. Nat'l Fuel Gas Co.*, 316 F.3d 424, 429–30 (3d Cir. 2003)).

As for the scope of a new trial, a trial court may, in its discretion, limit a new trial to a portion of the issues litigated in the first trial. Fed. R. Civ. P. 59(a); *see also Vizzini v. Ford Motor Co.,* 569 F.2d 754, 759 (3d Cir. 1977) ("[T]he trial court, in its sound discretion, may limit the grant of a new trial to only a portion of those issues litigated in the original proceeding, including the issue of damages only."). "The standard for determining whether a partial new trial is proper was long ago established: 'Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice.'" *Simone v. Golden Nugget Hotel & Casino*, 844 F.2d 1031, 1040 (3d Cir. 1988) (quoting *Gasoline Products Co. v. Champlin Ref. Co.,* 283 U.S. 494, 500 (1931)). Our Court of Appeals has "interpreted the *Gasoline Products* standard to prevent determination of damages separate from liability when there is a complex or tangled fact situation." *Id.* at 1040-41; *see also Vizzini*, 569 F.2d at 761.

Company Wrench argues that (1) the jury instructions on mitigation of damages and the competitor privilege contained prejudicial error; (2) the verdict form contained prejudicial error

with regard to an award of presumed and/or punitive damages, and was not unanimous; (3) Highway's experts offered highly prejudicial and duplicative testimony in contravention of this Court's rulings; (4) Highway improperly referred to previously dismissed claims that misdirected the jury's attention away from the claims at issue, and (5) the verdict was against the great weight of the evidence. Highway counters that none of this was the case.

### i. The mitigation instruction

Jury instructions constitute reversible error when they "fail[] to fairly and adequately present the issues in the case without confusing or misleading the jury." *Donlin v. Phillips Lighting N. Am. Corp.*, 581 F.3d 73, 79 (3d Cir. 2009) (internal quotation marks omitted); *see also Carter v. Exxon Co. USA*, 177 F.3d 197, 204 (3d Cir. 1999) ("If, looking at the charge as a whole, the instructions were capable of confusing and thereby misleading the jury, we must reverse."). Where an error is found in the instructions a new trial must be granted unless it is "highly probable that the error did not contribute to the judgment." *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 350 (3d Cir. 1999) (quoting *Murray v. United of Omaha Life Ins. Co.*, 145 F.3d 143, 156 (3d Cir.1998)). This Court concludes that taken as a whole, the jury instructions were not misleading or confusing.

Company Wrench takes issue with Jury Instruction No. 66, which provided as follows:

The injuries for which you may compensate the plaintiff by an award of damages against the defendant are those arising from the actual harm to the plaintiff that you find resulted from the defendant's conduct. You may not award damages for any harm to the extent that the defendant proves that the plaintiff did, or could have, avoided or reduced them by taking reasonable actions after November 11, 2010 to avoid or reduce such damages.

*See* Jury Instruction No. 66, ECF No. 196, at 30-31. Company Wrench contends that this erroneously instructs the jury that, "if Company Wrench could have reduced some, but not all, of its harm, the jury was to find that it did not suffer any actual harm." Pl.'s Mem. of Law in Supp.

("Pl.'s Mem."), ECF No. 202, at 14. However, Company Wrench fails to consider Jury Instruction No. 66's phrase "to the extent that," the plain meaning of which is a limitation on the total amount of actual damages awarded to the plaintiff. In other words, the amount of actual damages that the plaintiff could recover was that amount which the plaintiff could not have lessened through mitigative measures. Company Wrench's argument that this Court instructed the jury that it should award no damages if Company Wrench had an opportunity it failed to take to reduce its damages is a leap too far from the actual charge language and context of the instruction.

Moreover, Company Wrench did not object to the actual language of the mitigation charge on these grounds, instead objecting on conceptual grounds that the mitigation charge should not apply at all in a tort case and that the mitigating factors must be substantially similar to the lost opportunity. Because Company Wrench did not preserve a specific objection to *the language* "to the extent that" and this portion of the charge was not plainly erroneous, a new trial is not warranted on the basis of it. *See* Jury Charge Conf. Tr., ECF No. 206, at 37:22-25, 38:1-6. To the extent that Company Wrench argues that a mitigation instruction should at least have informed the jury that if it determined that an intentional tort occurred, it should not consider mitigation, pursuant to Section 918 of the Restatement (Second) of Torts, the jury found that Company Wrench suffered no actual damages, so there was nothing to mitigate.

### ii.     The competitor privilege instruction

This Court instructed the jury on the issue of justification, as follows:

49.     If you determine that Company Wrench had a prospective contractual relationship with Hyundai, you must also determine whether Highway purposefully intended to harm or prevent this prospective contractual relationship from occurring, without justification for doing so.

11

50. In certain circumstances, a defendant is justified in intervening with another business' perspective contractual relationships if the intervention relates to the subject of competition between the parties. In those instances, a defendant is not liable to a plaintiff for an interference with a prospective contractual relationship.

51. The plaintiff establishes that the defendant was not justified in interfering with its prospective business interests when the plaintiff proves by a preponderance of the evidence any one or more of the following:

   A. That the actions of the defendant did not concern the competition between the defendant and the plaintiff; or

   B. That the defendant employed wrongful means in intentionally inducing a third party from entering into a prospective contractual relationship with the plaintiff; or

   C. That the defendant's conduct created an unlawful restraint of trade; or

   D. That the defendant's purpose was not at least in part to further its own legitimate business interests.

52. "Wrongful conduct" may include any of the following: physical violence, fraud, or bringing a legal claim. Also, if you find that the defendant communicated a defamatory statement to Hyundai about Company Wrench, you may find that to be "wrongful conduct."

53. What is, or is not, justifiable conduct in a given situation must be determined based on what is acceptable conduct in the particular business. In making the determination of what is acceptable conduct, you may place consideration to the following factors:

   A. The nature of the defendant's conduct;

   B. The defendant's motive;

   C. The interests of the plaintiff with which the defendant's conduct interferes;

   D. The interests sought to be advanced by the defendant by his actions;

   E. The closeness or remoteness of the defendant's conduct to the interferences; and,

F.     The relations between the parties.

54.     The nature of the defendant's conduct is a significant factor for you to
        consider in determining whether the defendant's conduct is proper or not.
        A defendant does not improperly interfere with a potential relationship
        between two other parties if a defendant does not employ wrongful means
        and acts principally to protect its own interests as opposed to principally
        seeking to harm the plaintiff. You must also consider society's interests in
        protecting business competition as well as its interests in protecting the
        individual against interference with his legitimate pursuit of gain or a
        contract.

*See* Jury Instruction Nos. 49-54, ECF No. 196, at 24-26.

Highway submitted that its conduct was protected under the business competition

privilege because Highway was justified in sending the November 10, 2011 Reynolds email to

Hyundai so as to protect its (Highway's) legitimate financial business interests.[6]   A defendant

abuses the competitor privilege by engaging in independently actionable conduct. *Nat'l Data

Payment Sys. V. Meridian Bank*, 212 F.3d 849, 857-58 (3d Cir. 2000).   As Company Wrench

correctly points out, defamation is undoubtedly a flavor of independently actionable conduct, and

as such, would have constituted "wrongful conduct" and therefore an abuse of the competitor

privilege.

Company Wrench takes particular issue with Jury Instruction No. 52, which provides, "if

you find that the defendant communicated a defamatory statement to Hyundai about Company

Wrench, you *may* find that to be 'wrongful conduct,'" and argues that this erroneously instructed

the jury that the jury was not required to find that defamation qualified as "wrongful conduct."

Jury Instruction No. 52 as a whole reads that "'wrongful conduct' may include any of the

following: physical violence, fraud, or bringing a legal claim. Also, if you find that the defendant

---

[6] *See Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 214 (3d Cir. 2009) ("[T]o recover on a tortious
intentional interference with existing or prospective contractual relationships claim in Pennsylvania, a plaintiff must
prove that the defendant was not privileged or justified in interfering with its contracts. . . . Pennsylvania has
adopted section 768 of the Restatement (Second) of Torts, which recognizes that competitors, in certain
circumstances, are privileged in the course of competition to interfere with others' prospective contractual
relationships.").

communicated a defamatory statement to Hyundai about Company Wrench, you may find that to be 'wrongful conduct.'" Reading the instruction as a whole, it informs the jury that examples of wrongful conduct include physical violence, fraud, or bringing a legal claim, and specifically, communication of a defamatory statement also qualifies as wrongful conduct. This Court therefore finds no merit in Company Wrench's argument to the contrary.

But there's more.

The jury answered "NO" in response to Question No. 7 on the Verdict Form, which asked, "[d]o you find that Highway Equipment intended to, and did, interfere with a prospective contractual relationship between Company Wrench and Hyundai?" *See* Jury Verdict, ECF No. 198, Question No. 7, at 3-4. Thus, the jury never reached the competitor privilege issue encompassed in Jury Instructions 49 through 54, and Verdict Form Question No. 8, which asked, "[d]o you find that Highway Equipment's actions relative to a prospective contractual relationship between Company Wrench and Hyundai were taken for a legitimate business reason and were therefore justified?" *See* Jury Verdict, at 4. Thus, even if Jury Instruction No. 52 could be strained to fit Company Wrench's feared interpretation, any such error in enunciating the conditional privilege instruction was harmless because the jury never reached the "justification" issue after concluding that Highway did not intend to nor did interfere with a prospective contractual relationship between Company Wrench and Hyundai.

### iii.     The unanimity of the verdict

Company Wrench points to Verdict Form Question No. 7 and contends that it is not clear from the Verdict Form that the jury's verdict was truly unanimous because this question contains two separate inquiries and fails to provide certainty regarding the jury's intentions, such that a new trial is warranted.

14

Verdict Form Question No. 7 asks, "[d]o you find that Highway Equipment intended to, and did, interfere with a prospective contractual relationship between Company Wrench and Hyundai?" *See* Jury Verdict, Question No. 7, at 3-4. As Highway explains in its Brief in Opposition, if Highway intended to, but did not interfere with a prospective contractual relationship, or did not intend to, but did interfere with a prospective contractual relationship, Highway would not have been liable for a tort, as both intent to interfere with a prospective contractual relationship *and* actual interference in that relationship are required in order to establish liability for the tort. *See Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979) (recognizing that the requisite four elements of a cause of action for intentional interference with prospective contractual relations are: "(1) a prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct"). Thus, Question No. 7 was not a compound question and does not alone, or in combination with any other factors, warrant a new trial.

### iv.    Presumed and punitive damages questions on the Verdict Form

The Court instructed the jury on the issue of presumed damages as follows:

67.    If you find that the plaintiff has proven by clear and convincing evidence that the statement about plaintiff contained in the November 11, 2010 email that Company Wrench took certain actions in regard to its inventory "for sure, this was done to alter the appearance of their financial condition," was false, and that the defendant knew it was false or that defendant communicated it with reckless disregard for its truth, you may presume that the plaintiff suffered an injury to its reputation that would result from such a communication. This means you need not have proof that the plaintiff suffered damage to its reputation in order to award it damages for such harm because such harm is presumed by the law when a defendant publishes a false and defamatory communication with the knowledge that it is false, or with a reckless disregard for the truth.

70.     In determining the amount of an award for such presumed injury to the plaintiff's reputation, you may consider the character and previous general standing and reputation of the plaintiff in his community. You may also consider the character of the defamatory communication that the defendant published, its area of dissemination, and the extent and duration of the publication. You may also consider what probable effect the defendant's conduct had on the plaintiff's trade, business, or profession, and the harm that may have been sustained by the plaintiff as a result of that conduct.

71.     If you find that the defendant is liable to the plaintiff, you must then find the amount of money damages you believe will fairly and adequately compensate the plaintiff for all the actual injury he has sustained as a result of the occurrence. The amount you award must compensate the plaintiff completely for damages sustained in the past, as well as damages the plaintiff will reasonably likely sustain in the future. It may include amounts in addition to any presumed damages for damage to its reputation.

* * *

74.     A plaintiff must prove actual specific damages to be entitled to an award of damages beyond any presumed damages to plaintiff's reputation.

75.     Actual damages may include lost profits, and may include harm to business reputation (if such specific harm to reputation is beyond any presumed damages to reputation you may award).

*See* Jury Instructions Nos. 67-75, ECF No. 196, at 31-35.

As for the Jury Verdict, the jury answered "NO" to Verdict Form Question No. 5, which asked, "[d]o you find that Company Wrench suffered actual damages as a result of the November 11, 2010 email sent by Thomas Reynolds of Highway Equipment addressed to John Lim of Hyundai regarding Company Wrench's business practices?" *See* Jury Verdict, ECF No. 198, at 3. Right after Question No. 5, the Verdict Form directed the jury that "[i]f your answer to Question No. 5 is "YES", proceed to Question No. 6. If your answer to Question No. 5 is "NO", proceed to Question No. 7 [relating to Company Wrench's claim of intentional interference with

a prospective contractual relationship]." *See id.* The jury answered "NO" to Question No. 5, and "NO" as well to Question No. 7, after which the jury was directed that "[i]f your answer to Question No. 7 is "NO", proceed to Question No. 11. *See id.* at 4. Question No. 11 directed that "[i]f you answered "YES" to either or both of Questions 5 and/or 9, answer Question No. 11. If you answered "NO" to both Questions 5 and 9, your work is complete. Sign the Verdict Form and notify the Courtroom Deputy." *See id.* at 5. The jury answered "NO" to Question 5 and never got to Question 9, and they signed the verdict form. The Verdict Form did not permit the jury to award presumed damages at all, and the jury never reached the punitive damages issue in Question No. 11 because the Verdict Form directed the jury that their work was done before Question No. 11, if the jury answered "NO" to both Questions 5 and 9 (which they did as to Question 5, but the Court's form deprived them of the opportunity to answer Question 9).

Communications containing "words imputing (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct," are considered defamatory *per se.* *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 580 (E.D. Pa. 1999) *aff'd sub nom. Synygy, Inc. v. Scott-Levin*, 229 F.3d 1139 (3d Cir. 2000). Under Pennsylvania law, a defendant who publishes a statement which can be considered defamation *per se* "is liable for the proven, *actual* harm that the publication causes." *Pennoyer v. Marriott Hotel Servs., Inc.*, 324 F. Supp. 2d 614, 618-19 (E.D. Pa. 2004) (citing *Walker v. Grand Cent. Sanitation*, 634 A.2d 237, 244 (Pa. Super. Ct. 1993)) (emphasis in original). "To show actual damages in a defamation claim, the plaintiff must show competent proof." *Id.* at 618. Actual damages in defamation *per se* cases are divided into two types: general and special. *Id.* at 618-619. General damages typically flow from defamation, such as "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Id.* at 619. Special damages are defined as

"actual damages which are economic or pecuniary losses." *Id.* at 618 (quoting *Sprague v. Am. Bar Ass'n,* 276 F. Supp. 2d 365, 368–69 (E.D. Pa. 2003)).[7]

Highway argues that as to presumed damages, because "Company Wrench is a business entity and not an individual, this is not the type of defamation case in which the concept of presumed damages applies." *See* Def.'s Br. in Opp'n, ECF No. 203, at 16. Highway further posits that "when the plaintiff is a business corporation, it cannot be embarrassed or humiliated," such that "[a]n injury to its reputation would translate into a pecuniary loss," and where "a corporation cannot point to loss of revenues or profits as general damages, it is not entitled to recover damages based on defamation per se." *Id.* (citing *Synygy,* 51 F. Supp. 2d 570. However, the *Synygy* court never said such a concept was the rule of law, and Highway's purported paraphrasing of *Synygy*'s rule of law is just that, a paraphrasing, not supported by the reflective footnote in the *Synygy* court's Opinion where District Judge Anita B. Brody pointed out her "serious reservations about whether the doctrine of defamation *per se* is appropriately applied to corporate entities" only after acknowledging the "dearth of cases on the issue of whether disparaging words about a corporation are actionable *per se.*" *Synygy,* 51 F. Supp. 2d at 581 n.9. "Given the scant treatment of the subject," the *Synygy* court was not about to find that the defendant's statement was not defamation *per se,* given that the defendant's statement could be seen as harming the reputation of the corporate plaintiff. *Id.*

The Court does find the analysis of the *Synygy* court instructive as to the difference between presumed damages and general damages under defamation law:

> At common law, if a plaintiff's claim was for defamation *per se,* he or she did not
> have to prove any actual harm; damages were presumed. Restatement (Second) of

---

[7] The Pennsylvania Superior Court has explicitly adopted Section 621 of the Restatement (Second) of Torts in requiring only a showing of general damages in defamation *per se* cases. *Synygy,* 51 F.Supp. 2d at 581–82 (citing *Walker v. Grand Cent. Sanitation, Inc.,* 634 A.2d 237, 244 (Pa. Super. Ct. 1993)).

Torts § 621. Presuming damages left juries in the awkward position of awarding damages without any criteria with which to measure harm.[10] Concern over juries considering impermissible factors such as the defendant's wealth or the unpopularity of the views expressed loomed large.

The Restatement (Second) of Torts, however, remedied this problem by requiring a plaintiff in a defamation *per se* action to make a showing of general damage, i.e., proof of reputational harm. Restatement (Second) of Torts § 621. In [*Walker v. Grand Cent. Sanitation, Inc.*, 634 A.2d 237 (Pa. Super. Ct. 1993)], the Pennsylvania Superior Court held that Section 621 of the Restatement (Second) of Torts accurately states the law of Pennsylvania in requiring a showing of general damages in defamation *per se* cases. This conforms with Pennsylvania's tendency to adopt the Restatement with respect to defamation. *See also Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 37, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971) ("Pennsylvania's libel law tracks almost precisely the Restatement (First) of Torts provisions on the subject.").

*Synygy*, 51 F. Supp. 2d at 581-82 (internal citations omitted). Post-*Synygy*, our Court of Appeals has noted that "[a]lthough *Walker* appears generally to foreclose presumed damages under Pennsylvania law, it is not entirely clear whether presumed damages remain available where the plaintiff proves actual malice." *Franklin Prescriptions, Inc. v. New York Times Co.*, 424 F.3d 336, 342 (3d Cir. 2005). Following *Franklin Prescriptions, Inc.*, the Pennsylvania Superior Court only a few months ago concluded that in defamation *per se* cases, "presumed damages do indeed remain available upon a showing of actual malice." *Joseph v. Scranton Times, L.P.*, 89 A.3d 251, 272 (Pa. Super. Ct. 2014), *reargument denied* (May 13, 2014)[8].

Here, the instructions to the jury on actual damages expressly set forth that "[a]ctual damages may include lost profits, and may include harm to business reputation (if such specific harm to reputation is beyond any presumed damages to reputation you may award)." Jury Instruction No. 75, ECF No. 196, at 35. The instructions further provided that "[d]amages cannot be recovered if they are speculative." *Id.* at Jury Instruction No. 77. Specifically as to

---

[8] The plaintiffs in *Joseph* were two (2) individuals and two (2) businesses. The *Joseph* court's holding as to the availability of presumed damages in the absence of actual damages, and the fact that the court did not exclude the business plaintiffs from such a recovery, 89 A. 3d at 270-273, would appear to nix the Defendant's *Synergy*-based argument that such damages are categorically not available to a "business" plaintiff.

lost profits, the instructions set forth that "[l]ost profit damages are recoverable if: (a) there is evidence to establish the damages with reasonable certainty; (b) the damages were caused by the conduct of the defendant; and (c) the damages were reasonably foreseeable." *Id.* at Jury Instruction No. 76. The Court's instructions on actual damages were correct.

The Court has thoroughly reviewed the jury instructions, the verdict form, and the relevant case law, and concludes that the jury unequivocally decided the actual damages issue as explained by the *Synygy* court: encompassing within its scope reputation-based general damages and any economic or pecuniary losses. However, because of the way in which the Court set up the Verdict Form, the jury did not have an opportunity to answer a Verdict Form question on actual-malice-based presumed damages stemming from Mr. Reynolds' statement in the email regarding one of the Plaintiff's financial transactions, "for sure, this was done to alter the appearance of their financial condition." Such an error in the drafting of the Verdict Form warrants a new trial on presumed damages.

As for punitive damages, Jury Instruction No. 79, provided:

> 79.  I will now instruct you on the topic of punitive damages. Such damages are separate and distinct form presumed or actual damages. If you find that the conduct of the defendant caused actual damage to plaintiff, and you find that plaintiff has proven by clear and convincing evidence that such conduct was outrageous, and that defendant published the statement in the November 11, 2010 email that Company Wrench took certain actions in regard to its inventory, "for sure, this was done to alter the appearance of their financial condition," knowing it to be false or with a reckless disregard for its truth, and that it was false, you may award punitive damages to the plaintiff in order to punish the defendant for its conduct and to deter the defendant and others from committing similar acts. A person's conduct is outrageous when it is malicious, wanton, willful, or oppressive, or shows reckless indifference to the interests of others.

Jury Instructions, ECF No. 196, at 36-37. In harmony with this instruction, Verdict Form Question No. 11 spoke to punitive damages. *See* Jury Verdict, ECF No. 198, at 5. However, the

jury did not answer this question because the jury answered "NO" to Question 5 and never got to Question 9, and thus, under the directions in the Verdict Form, the jury viewed its work as complete.

Prior to this trial, courts had allowed awards of punitive damages where the actual damages were nominal or nonexistent. *See Paul v. Hearst Corp.*, 261 F. Supp. 2d 303, 306-07 (M.D. Pa. 2002) (noting that "[u]nder Pennsylvania law, a finding of actual malice is sufficient to trigger consideration of punitive damages"), and that appears to be in accord with recently-confirmed Pennsylvania law, *see Joseph v. Scranton Times, L.P.*, 89 A. 3d 251 (Pa. Super. Ct. 2014) (presumed damages do not require a predicate award of actual damages). Because the jury was not permitted to reach Verdict Form Question No. 11, but should have been, the Court concludes that Company Wrench's new trial must also encompass the issue of punitive damages.[9]

As explained above, a partial new trial may be granted when it clearly appears that the issue to be retried is distinct and separable from the others, and a determination of damages separate from liability is not permitted when there is a "complex or tangled fact situation." *Simone*, 844 F.2d at 1040.[10] Here, the factual scenario is neither complex nor tangled, and the presumed and punitive damages issues are distinct and separable from the other issues resolved at trial. A jury already found that (1) Mr. Reynolds' email addressed to John Lim of Hyundai was not substantially true in all material aspects; (2) Mr. Reynolds' email was defamatory of Company Wrench and Mr. Reynolds sent his email with some level of fault; (3) Mr. Reynolds'

---

[9] At the conclusion of the evidence, the Court determined that there was sufficient evidence admitted from which the jury could conclude that there was clear and convincing evidence that Mr. Reynolds acted with actual malice when he stated in his email to Mr. Lim that Company Wrench manipulated its inventory "to alter the appearance of their financial condition." The Court concluded that the jury could, but would not be required to, find that Mr. Reynolds knowingly made that statement up.

[10] A partial new trial on the issue of punitive damages is what was ordered in *Paul*, 261 F. Supp. 2d 303, n.1 and 305.

email was understood by Hyundai to be defamatory of Company Wrench in its meaning; (4) Mr. Reynolds' email was intended to be understood by Hyundai to be about Company Wrench and its business practices; (5) Company Wrench did not suffer any actual damages as a result of Mr. Reynolds' email; and (6) that Highway Equipment did not interfere with a prospective contractual relationship between Company Wrench and Hyundai. *See* Jury Verdict, ECF No. 198. Those matters are established. What remains to be determined at a new trial is: (1) whether a jury finds that Company Wrench "has proven by clear and convincing evidence that the statement about plaintiff contained in [the email] that Company Wrench took certain actions in regard to its inventory 'for sure, this was done to alter the appearance of their financial condition,' was false, and that the defendant knew it was false or that the defendant communicated it with a reckless disregard for its truth" (Jury Instruction No. 67, ECF No. 196, at 31); (2) if, yes, the amount of actual-malice-based presumed damages, if any; and (3) the amount of punitive damages, if any, to be leveled against Highway.

Given what the jury has already determined, it would unnecessarily and unjustly deprive each party of the benefit of the portions of the verdict that they each won were a new trial *in toto* be ordered. Further, the issues to be retried are both factually and legally narrow, and are neither complex nor sophisticated. In light of what the jury did find, these issues are not so inexorably intertwined with the balance of the case so as to require a complete new trial, either as to liability generally, or as to damages more generally. The Court concludes that the presumed and punitive damages issues are sufficiently separate and distinct from the liability and actual damages issues, and a determination of presumed and punitive damages issues is therefore permitted in a new trial.[11]

---

[11] While the record does not appear to reveal a precise, specific objection to this arrangement of the questions on the Verdict Form, for the reasons noted, the Court concludes that it committed plain error in this regard, as the Verdict

### v.    The testimony of Highway's damages experts

Relying on Federal Rule of Evidence 403, Company Wrench contends that Highway's

damages experts, Mr. Robert P. Overbaugh and Mr. Mark M. Gleason, gave duplicative, highly

prejudicial testimony - contrary to Highway's representation to this Court that their testimony

would not be duplicative - as to (1) the alleged failure of Mr. Ronald Slee, Company Wrench's

damages expert, to verify the information provided to him; (2) Mr. Slee's alleged lack of

understanding of Company Wrench's business model; (3) the absence of a contract between

Hyundai and Company Wrench; (4) Mr. Slee's alleged failure to acknowledge that the sample

Hyundai agreement contained a termination provision; and (5) Mr. Slee's alleged failure to

consider incremental costs. *See* Pl.'s Mem. at 21-22.

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if

its probative value is substantially outweighed by a danger of one or more of the following:

unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

needlessly presenting cumulative evidence."    Fed. R. Evid. 403.    This Court, as well as

---

Form (as the Court set it up) plainly and manifestly deprived Company Wrench of a jury determination on material portions of its claim, and for which the Court had concluded the evidentiary record would have supported a verdict on presumed and punitive damages if the jury found the requisite facts and level of fault. In the Court's judgment, the referenced portions of the Verdict form were erroneous, such error is plain, it affected substantial rights, and seriously affected the trial proceedings. *See U.S. v. Olano*, 507 U.S. 725, 732 (1993). Fed. R. Civ. P. 51(d)(2).

At the end of the day, it is the Court's job to get it right, even in the hurly-burly of formulating and editing jury instructions and a verdict form as a civil trial is concluding and as trial counsel is hotly arguing over parts of them. Perhaps this situation brings life to the apt observation of famed New York City Congressman and Mayor, Fiorello LaGuardia, "when I make a mistake, it's a beaut." *See* A. Hurwitz, When Judges Err: Is Confession Good for the Soul?, 56 Ariz. L. Rev. 343, 344 (2014). The Court does take some solace in the fact that Senior Superior Court Judge Eugene B. Strassburger III had to recently wade through, and exquisitely analyze, decades of Pennsylvania and federal decisional and statutory law, along with American Law Institute pronouncements, to reach his conclusion that Pennsylvania law permitted punitive and presumed damages to be awarded in the absence of actual damages, a conclusion which counsels the award of a partial new trial here. *See Joseph v. Scranton Times, L.P.*, 89 A.3d 251, 269-273 (Pa. Super. Ct. 2014).

Further, this is not a situation covered by Fed. R. Civ. P. 49(a)(3), in that the parties and the Court intended these matters be considered by the jury, but that consideration was thwarted by the Verdict Form provided by the Court. Thus, unless the parties would now consent to the Court in essence conducting a bench trial on the issues of presumed and punitive damages based on the trial record (as supplemented by the parties), these matters would not be resolved by the Court pursuant to Rule 49(a)(3), but would go to a jury.

Plaintiff's counsel, was persistent in insuring that any excessively duplicative testimony, when it was offered, was promptly halted. In any event, the basis of Company Wrench's motion to exclude such testimony that it complains of now was that it would be "unnecessary," "needless, cumulative evidence." *See* Pl.'s Mot. in Limine to Exclude Duplicative Expert Test., ECF No. 173, at 1-3. In other words, a waste of time for the Court, such that the Court should exclude the duplicative testimony under 403, in keeping with Rule 102's guiding provision that "[t]hese rules should be construed so as to administer every proceeding fairly, [and] eliminate unjustifiable expense and delay. . . ." *See* Fed. R. Evid. 102.

Company Wrench's position seems to be that it initially wanted the evidence excluded because the evidence was unnecessary and needlessly cumulative, per its pretrial Motion *in Limine*, and its lawyers then spoke up during trial every time such evidence set off their cumulative-evidence alarm. Now that upon reflection such evidence that did come in may have tended to emphasize the perceived weaknesses in Company Wrench's damages case (as is the goal of any opposing party), it claims that such evidence was unfairly prejudicial. This Court finds no merit in any of that. Any duplicative testimony of Messrs. Gleason and Overbaugh that did make its way into the trial was just that: duplicative, and while it might have added a few moments to the duration of the trial, that it did so in no way "unfairly prejudiced" Company Wrench or the trial process. Also, Company Wrench was free to list and call as witnesses additional experts to undermine the defense experts' testimony, but did not do so, instead banking on Mr. Slee's testimony.[12] There was no Rule 403, or other, error in allowing both Messrs. Gleason and Overbaugh to testify.

---

[12] Mr. Slee and his testimony were the subject of a vigorously contested *Daubert* pre-trial motion, and the Court ruled that Mr. Slee could testify, recognizing that the Defendant could subject his testimony to the crucible of cross-examination, which it did. At the same time, the Plaintiff was on notice then of the nature and scope of the coming attacks on Mr. Slee's testimony, and stuck with Mr. Slee, and Mr. Slee alone, as its damages expert witness, which

Company Wrench also relatedly asserts that even though this Court prohibited Highway's damages experts from testifying about the existence of (or possible termination) of any actual contract between Company Wrench and Hyundai, Highway nevertheless forged ahead and Mr. Gleason blurted out on the witness stand that no such contract existed and any such contract surely would have been terminated. Pl.'s Mem. at 23. The Plaintiff contends that this testimony severely prejudiced the jury because Mr. Gleason was not qualified to discuss or offer any opinion on such issue. *Id.* Company Wrench does concede that "Plaintiff's counsel immediately objected when Mr. Gleason made the improper statement, and this Court struck the witness's testimony and instructed the jury to disregard the statement." *Id.* However, Company Wrench argues that "because Mr. Gleason was in fact qualified as an expert for other purposes, any such limiting instruction was likely unable to completely scrub the statement from the minds of the jury." *Id.* This Court concludes that its limiting instruction and direction to disregard that utterance was sufficient, especially because Mr. Gleason's testimony was tangential to the contract-related issue in the case at trial - given the fact that there *was* no contract, did Highway intentionally interfere with the making of a *prospective* contract.[13]

---

was its call to make. That the Defendant's damages witnesses took on his testimony as they did was no surprise, and was not unduly or unfairly prejudicial to the Plaintiff. Plaintiff was free to stick with Mr. Slee either as a matter of trial strategy, or because he was the best/only witness available to support its damage claim, or both.

[13] This Court similarly finds no merit to Company Wrench's argument that, in general, Highway improperly brought the jury's attention to the lack of a contract between Company Wrench and Highway, as well as to Company Wrench's previously dismissed claim for breach of contract, which then confused and misled the jury as to the actual claims at issue. There were only two claims in this trial: defamation and intentional interference with *prospective* contractual relations, the latter of which remained because there *was* in fact no contract. Apart from the fact that the Court's instructions were quite clear on this point, and that Plaintiff's counsel made a vigorous and effectively explanatory closing argument, any reference to the lack of a contract or Company Wrench's relatedly dismissed breach of contract claim just as likely would have bolstered Company Wrench's argument that there was no contract because of Mr. Reynolds' defamatory email. Company Wrench's contention that the jury was improperly led to believe that Company Wrench was required to show the existence of a contractual relationship such that a new trial is warranted is contrary to the Court's quite clear instructions as to that claim, which the jury is presumed to have followed.

### vi.     Whether the verdict was against the great weight of the evidence

Finally, Company Wrench contends that the jury's verdict was against the great weight of the evidence and contrary to any reasonable view of the evidence presented at trial, therefore strongly suggesting that the verdict was the product of error or prejudice.  Company Wrench contends that, in essence, the cumulative nature of the errors it asserts, considered as a whole, meant that it was deprived of a fair trial. Specifically, Company Wrench says that this is so because the jury was not permitted to award presumed or punitive damages, the jury was incorrectly instructed on the concepts of mitigation of damages and the conditional privilege as to the intentional interference with prospective contractual relations claim, and the jury was faced with duplicative and prohibited damages testimony.

As discussed above, this Court will grant Company Wrench a new trial on presumed damages, as well as punitive damages, to remedy the fact that the jury was erroneously not permitted to reach a verdict given the form of the questions on the special verdict form as to those issues. As for Company Wrench's other arguments, this Court concludes that the conditional privilege and mitigation instructions were proper and for the reasons stated, any error regarding them was harmless, and allowing any allegedly duplicative damages testimony and evidence about the lack of a contract between Company Wrench and Hyundai was not error at all.

## III.  **CONCLUSION**

For the foregoing reasons, Company Wrench's Renewed Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial, ECF No. 201, is granted in part and denied in part. The Motion is granted to the extent that Company Wrench is granted a new trial on the issues of punitive and presumed damages only, and denied in all other respects.

An appropriate Order will follow.

Mark R. Hornak
United States District Judge

Dated:  September 12, 2014

cc:  All counsel of record